MANUEL OLIVARES v. PILAR GARCIA.

No. 6477. Decided March 25, 1936.
(91 S. W., 2d Series, 1059.)

*Perkins & Floyd,* of Alice, and *J. T. Canalles,* of Browns-
ville, for plaintiff in error.

Where a suit is filed upon a note before maturity and a
cross action is filed by the defendant against the plaintiff and
the amount due plaintiff by defendant is deposited in court
prior to the maturity date thereof, the claim on behalf of plain-
tiff against defendant is terminated with such deposit and the
plaintiff should not be entitled to any collection fees and interest
after the date of default, since the money is in the court for
the benefit of plaintiff.   Biering v. First Natl. Bank, 69 Texas,
599; 7 S. W., 90; Bartley v. J. M. Radford Gro. Co., 15 S. W.
(2d) 46; Kaufman v. Armstrong, 74 Texas, 65, 11 S. W., 1048;
5 Tex. Jur., 270.

*Floyd & Floyd,* of Alice, for defendant in error.
Cited the following cases:   Cavanaugh v. Peterson, 47

Texas, 197; First Natl. Bank v. Cooper, 12 S. W. (2d) 271; Trawick v. Martin Brown Co., 79 Texas, 460; Taylor v. Smith, 27 S. W. (2d) 825.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

Pilar Garcia filed her original petition in the District Court of Duval County, on September 30, 1931, seeking to collect on a promissory note in the sum of $1500.00, executed by Manuel Olivares on August 18, 1930, payable to her order on December 18, 1931, with interest from its date at the rate of 8% per annum; the note contains the following provision:—

"And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on the same, or same is collected through the Probate Court, then _____ agree that an additional amount of ten per cent on the principal and interest of this note shall be added to the same as collection fees."

The note was not due when the suit was filed but the petition contained the necessary averments, duly verified, for the issuance of a writ of attachment upon a debt not yet due. The required bond was given, with Genaro Garcia and Mauro Garcia as sureties, who were subsequently made cross defendants with Pilar Garcia, their principal, in the cross action for damages by defendant below, Olivares.

A writ of attachment regularly issued and was levied upon two lots of land in Robstown, Nueces County, and another writ of attachment was likewise issued and levied upon two lots in San Diego, Duval County.

Prayer in the petition was for judgment for principal and interest due on said note, foreclosure of attachment lien, for costs of suit, and for such other relief, general and special, that she may be entitled to.

The return term of court convened on March 7, 1932.

On December 14, 1931, Olivares deposited with the clerk of the court in which suit was filed, the sum of $1660.00, amount of principal and interest thereon to maturity upon the note described in plaintiff's petition. The clerk's receipt contains the following recital:—"Said sum of money is deposited in this court by the defendant, Manuel Olivares, as a tender in this cause and is to remain in the registry of this court and subject to the orders of this court until final judgment is rendered in this cause."

In this connection, the clerk testified that under the terms of the deposit he could not have turned the money over to Miss

Pilar Garcia—he was told not to turn it over to her only under the court's order.

The trial court held this was a conditional tender subject to the outcome of the suit.

Defendant Olivares filed his original answer and cross action for damages on October 21, 1931, (which does not appear in the transcript) and his amended original answer and cross action on March 14, 1932, in which, he admitted execution and delivery of the note, alleged he deposited in the registry of the court, prior to· the maturity of said note, the full amount of principal and interest thereon, denied that he was about to dispose of his property with intent to defraud his creditors and the other averments in plaintiff's petition that the attachment was not sued out for the purpose of injuring and harassing him and that plaintiff would probably lose her debt unless such attachment was issued. By way of cross action, as elements of his claim for damages, he alleged:—

(1) That he had been compelled, because of the attachment, to pay two debts, aggregating $529.44, which he owed; (2) that he was forced because .of the attachment suit, to accept the *cash value* of an insurance policy, which was $1218.15, when the *policy had a paid up* insurance value of $3400.00, and he thereby sustained an alleged loss of $2181.85; (3) that by the attachment being levied upon and depriving him of *(a)* the Duval County property, he had been damaged $2500.00, and *(b)* Nueces County property, he had been damaged $2500.00; and (4) that further as a direct and proximate result of said attachment he had suffered actual damages to his credit locally in the additional sum of $5,000.00.

Those items comprise the alleged "actual damages" sought by defendant, and in addition thereto he prayed for exemplary damages "in at least" the sum of $10,000.00.

Plaintiff, Pilar Garcia, on December 8, 1931, amended her petition and alleged the note sued on to be past due and unpaid; her prayer for relief included the attorney's fee stipulated in said note; on March 15, 1932, her supplemental petition containing general demurrer and certain special exceptions directed to the defendant's amended answer and cross action, general denial and certain special pleas, unnecessary to here state, was filed. She also answered that the alleged tender was not made in good faith, that it was not for a sufficient amount, that it did not, in fact, constitute a tender and that it was impossible for her to withdraw the same. She denied that the defendant ever sought an extension of the note from her and

alleged that the levies of the writs of attachment were mere "office levies" which did not disturb the defendant's possession of the property. She further plead that she, at no time, communicated to any of defendant's creditors the fact that the suit had been filed and the attachment issued.

This answer, in its entirety, was adopted by Genaro Garcia and Mauro Garcia, the sureties on the attachment bond, in their answer filed in the case.

Olivares filed a supplemental answer consisting of a general demurrer and a general denial.

The trial court sustained the plaintiff's general demurrer to the defendant's cross action, dismissed same upon defendant's refusal to amend, and upon trial of the cause, rendered judgment for plaintiff in the full amount of principal, interest and attorney's fees and foreclosed the attachment lien on the Robstown property only; plaintiff having voluntarily released the attachment lien on the San Diego property, the same was discharged. The court further ordered payment to plaintiff of the sum of $1660.00 deposited by defendant in the registry of the court, as a credit only, on said judgment and not in full satisfaction thereof. Said judgment was affirmed by the Court of Civil Appeals. 56 S. W. (2d) 243.

## OPINION

■ *First:*—The fact that the defendant may have paid several debts he justly owed to others and that he may have voluntarily surrendered some of his life insurance policies for their cash value, to meet his obligations does not authorize the recovery of such amounts as items of damages because of the levy of writs of attachment on his real estate, such levy not accompanied by any disturbance of his use, possession or enjoyment of such real estate, and there being no claim that such levy was the proximate cause of defeating an advantageous sale or trade of the property pending when the attachment was levied and the land subsequently depreciated in value, or that the plaintiff in attachment had knowledge that a trade was about to be made and that it was consummated after the levy without knowledge of the levy having been made.

In Trawick v. Martin Brown Co., 79 Texas, 460, 14 S. W., 564, the pleadings bearing a marked similarity to those of the defendant in this case, Judge Gaines said:

"Therefore the first question for our determination is whether in an action for the wrongful and malicious suing out of an attachment an ordinary levy upon real estate will author-

ize a recovery either of actual or exemplary damages. We are of opinion that the question must be answered in the negative. * * *

"A levy upon real estate under our statutes not being attended with any disturbance of the possession, use, or enjoyment of the premises by the owner, it follows that as a general rule such a levy can afford no ground for the recovery of actual damages. Counsel for appellant, who have filed an elaborate brief and argument, have cited no case in which such a recovery has been allowed. * * *

"We are of opinion, therefore, that the appellant's plea in reconvention showed no actual damages resulting from the levy of the writ. * * *

"Ordinarily, as we take it, where the defendant, as in this case, owes the debt for which he is sued a levy upon real estate can have no such effect. If he can find a purchaser he can pay the debt, as he ought to do, and discharge the lien. * * *

"It remains to inquire whether the defendant was entitled to recover for the alleged injury to his feelings and for loss of credit resulting from the issuing of the writ. It is too plain for argument that this does not belong to either of the classes of cases in which compensation has been allowed for mental suffering. Wallace v. Finberg, supra, (46 Texas, 35), is authority for the doctrine that loss of credit is not an element of actual damages. Whatever may be the rule in other jurisdictions, that is well settled in this court. We think therefore that defendant's plea does not show actual damage, and are of opinion that in cases where injury to property is claimed exemplary damages should not be allowed without allegation and proof of actual damage. * * *

"Loss of credit may be looked to in assessing exemplary damages, but according to the rule in this court is not an element of actual damages in any case.

"The alleged fact that the defendant's other creditors were induced by the plaintiff's attachment to pursue the same remedy does not render the plaintiff liable for any loss resulting from their action. * * *

"We conclude that the court did not err in sustaining the demurrer to the plea in reconvention, and the judgment is therefore affirmed," thus answering all the defendant's contentions on the subject.

To the same effect, see Cavanaugh v. Peterson, 47 Texas, 197; Tsesmelis v. Sinton State Bank, 53 S. W. (2d) 461, 85 A. L. R. 319; First Natl. Bank v. Cooper, 12 S. W. (2d) 271,

writ of error refused; Oscar v. Sackville, 270 S. W., 897; Spillman v. Weston, 200 S. W., 557.

The general demurrer to defendant's cross action was correctly sustained.

■ *Second:*—The deposit in the registry of the Court, coupled as it was with the restrictions named, was, as correctly held by the trial court, only a conditional tender. 26 R. C. L. 640.

The deposit was made on December 14, 1931; at that time the original answer and cross action was on file. Although not in the transcript, defendant in his application for writ of error states "on October 21, 1931, plaintiff in error filed his original answer and cross action in said cause, which consisted of a general demurrer and general denial to the plaintiff's original petition and prayed for actual damages by reason of the unlawful issuance of said attachment."

It thus appears that the terms of the deposit, as measured by the defendant's pleadings on file at that time, limited the right of plaintiff to accept the tendor until final judgment to be rendered at some indefinite time in the future, and then only after the cross action for damages had been litigated and finally disposed of.

No tender was ever made to plaintiff personally. It was impossible, under the conditions annexed to the deposit in court, for the plaintiff, Garcia, to accept it as a tender and withdraw the money until she had successfully defended against the cross action, in the meantime losing the interest thereon.

This deposit was followed by an amended cross action in which a large recovery in damages was sought, and this of course would have to be successfully met before even the court could order the deposit paid over to plaintiff.

The deposit being upon a condition which the defendant had no legal right to demand, was not such a lawful tender as would stop interest or make the plaintiff liable for costs subsequently incurred. Flake v. Nuse, 51 Texas, 98.

■ Pending the suit, the note matured, and judgment was not rendered until afterwards. This was proper, the plaintiff having amended and prayed for attorney's fees in addition to principal and interest. Rabb v. White, 45 S. W., 850; Panhandle Nat'l. Bank v. Still, 84 Texas, 339, 19 S. W., 479; Robertson v. Balham, 192 S. W., 583; Culbertson v. Cabeen, 29 Texas, 247; Stevenson v. Bassett, 51 Texas, 544; Pioneer S. & L. Co. v. Peck & Fly, 20 Texas Civ. App., 111, 49 S. W. 160.

Judge Brown said in Laning v. Iron City Nat'l. Bank, 89

Texas, 601, 35 S. W., 1048, that the plaintiff could, after the notes became due, have proceeded without amendment.

When judgment was rendered the note had matured, was due and unpaid, and attorney's fees having been prayed for, the court properly rendered judgment for the total amount of principal, interest and attorney's fees.  Harfst v. State Bank, 56 Texas Civ. App., 31, 119 S. W., 694.

■ It is not necessary to plead or prove the attachment proceedings in order to be entitled to a foreclosure of the attachment lien; the court takes judicial notice of the proceedings as part of the record in the case (5 Tex. Jur., p. 247, Sec. 83), and the judgment of foreclosure was proper, plaintiff having recovered in the suit.  Art. 301, Rev. Stat., 1925.

The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court March 25, 1936.