**KEETON et al. v. GILLAM SOAP WORKS.**
No. 5913.

Court of Civil Appeals of Texas. Amarillo.
Nov. 13, 1948.

Rehearing Denied Dec. 20, 1948.

Crenshaw, Dupree, Milam & Crenshaw, of Lubbock, for appellants.

Culbertson, Morgan, Christopher & Bailey, of Fort Worth, for appellee.

PITTS, Chief Justice.

This is a suit for breach of contract filed by appellee, Gillam Soap Works, a corporation, against appellants, Claude Keeton, Ralph Keeton, Sidney Keeton, Rogstad Zackery, and Keeton Packing Company, a corporation. Appellee alleged in effect that it advanced the sum of $10,000 to appellants in payment for tallow which appellants failed and refused to deliver to it in accordance with a previous contract made between them, for which reason it prays that the said sum be returned to it with interest thereon, together with damages in the sum of $2646.80. Appellants answered with a general denial and alleged in a cross action that appellee breached the contract, for which reason they prayed for damages in the sum of $4920.54 and tendered into the trial court for the benefit of appellee the sum of $5979.46, the same being the balance of the $10,000 advanced to them by appellee.

The case was tried to the court without a jury and on April 26, 1948, judgment was rendered against appellants jointly and severally and for appellee in the sum of $10,000 with 6% interest thereon from the date of the judgment only. The trial court further ordered and directed that the sum of $5079.46 tendered and paid into the treasury of the trial court by appellants for the benefit of appellee be paid by the trial court clerk to appellee to be credited on the judgment and the record re-

veals that such was done. Both parties perfected appeals from the trial court's judgment, each contending that the other breached the terms of the contract and each claiming damages by reason of the breach. At the request of appellants, the trial court filed its findings of fact and conclusions of law. It found in effect that appellants failed to tender to appellee the quantity and grade of tallow they agreed to deliver and it concluded that such constituted a breach of the contract by appellants. If there is evidence of probative force to support such a finding, the parties to the suit and this court are bound thereby.

■ To test the sufficiency of the evidence to determine if it will support the trial court's findings, we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence and circumstances to the contrary. It is also a well settled rule that a trial court's findings of fact will be upheld unless they are manifestly erroneous and they will be overruled only when they are without any evidence of probative force to support them or where they are so against the great weight and preponderance of the evidence as to the manifestly wrong. Boston Ins. Co. v. Rainwater, Tex.Civ. App., 197 S.W.2d 118, and other authorities there cited.

■ Most of the transactions had between the parties were had between E. O. Gillam acting for appellee and Claude Keeton acting for appellants. The said parties were well acquainted with each other as a result of previous business transactions such as they had on this occasion. The evidence reveals that on March 1, 1947, appellants contracted through a telephone conversation between Gillam and Claude Keeton to sell to appellee a tank carload of the best grade of tallow weighing about 60,000 pounds at a price of 20½¢ per pound f. o. b. Lubbock, Texas, to be shipped to Fort Worth, Texas, and to be delivered within ten days or two weeks. It was further agreed at the time that appellee would advance to appellants the sum of $10,000 not later than March 12, 1947, to be applied on the purchase price

of the tallow. The said sum of money was sent to appellants by appellee on March 5, 1947. On or about March 9, 1947, appellants furnished appellee a sample of the grade of tallow they proposed to ship to appellee and a laboratory test showed it to be of the grade known as "special," which is the best grade of tallow. On March 12, 1947, Gillam and Claude Keeton had another telephone conversation in which Gillam told Keeton about the test and the grade of the sample of tallow furnished. Keeton expressed approval of the good quality and told Gillam that his shipment of tallow was ready but he would like to sell it to another customer for an increased price of 26¾¢ per pound if it would be agreeable with Gillam, in which event he stated to Gillam that they would send his shipment to him within two or three weeks and it would be even a little better grade of tallow than what they then had for shipment. Gillam agreed to accommodate appellants and the shipment for appellee was thus deferred by mutual agreement until about April 1, 1947. The shipment was not made however and the parties further negotiated with each other by telephone, telegraph and letter until early in May, 1947. About May 6, 1947, appellee was advised by appellants that they had a part of a carload ready to ship to appellee. Gillam asked for a sample of the tallow. The sample was furnished to him and he made a laboratory test of it and found it to be what is known as grade "number 2," which was a lower grade than "special". Gillam advised appellants in effect that neither the quality nor quantity was in keeping with the terms of the contract and because of their failure to comply with the terms of the contract, the shipment would not be accepted by him.

Appellants contend that they did not agree to furnish appellee with the grade of tallow known as "special" but there is evidence of probative force that Claude Keeton agreed to furnish appellee as good a grade of tallow as could be purchased from Swift or Armour or anywhere else. There was further evidence that appellants furnished appellee with a sample of the said tallow and a laboratory test of it showed it to be "special," which was the best grade.

It is our opinion that there is sufficient evidence of probative force to support the trial court's finding to the effect that appellants breached the terms of the contract and appellee was therefore entitled to have judgment for the sum of $10,000 which had been advanced by it to appellants and appellants' points to the contrary are overruled.

Appellee complains in a counter point properly preserved that the trial court erred in its failure and refusal to allow it 6% interest on the sum of $10,000 advanced by it to appellants for the full time appellants had the use of the said money, the record revealing that the judgment of the trial court awarded appellee interest only from the date of the judgment rendered on April 26, 1948. We sustain appellee's complaint made in such counter point but we hold that it was entitled to interest only from the date the contract was breached. The period of time from the breach of the contract on or about May 10, 1947, until the date of the judgment of the trial court on April 26, 1948, was eleven and one-half months. The interest on the said sum for the said period of time at the rate of 6% is $575. It appears that appellants tendered a part of the sum advanced by appellee into the trial court for the use of appellee. But a tender of less than the full amount does not stop the running of interest on the full amount. Olivares v. Garcia, 127 Tex. 112, 91 S.W.2d 1059; Taylor v. Hemphill, Tex.Civ.App., 238 S.W. 986, and other authorities there cited. Since it appears that appellants breached the terms of the contract on or about May 10, 1947, and that they wrongfully withheld the use of appellee's $10,000 thereafter until the date of the judgment, it is our opinion that appellee is entitled to have the judgment of the trial court reformed by adding the sum of $575 to the trial court's judgment of $10,000. In support of our position we cite other authorities as follows, to wit: Phillips v. Jones, Tex.Civ.App., 283 S.W. 298; Marion Machine Foundry & Supply Co. v. Peck, Tex.Civ.App., 282 S.W. 926; Shield Co., Inc. v. Carter, Tex.Civ.App., 58 S.W. 2d 1068.

Appellee likewise presents a counter point claiming damages in the sum of $3375. In the trial court appellee sued for damages in the sum of $2646.80 and pleaded in effect as a basis for its damages that appellants breached their contract not later than April 1, 1947, and that it was forced by reason of such breach to go into the open market immediately thereafter and buy 60,000 pounds of tallow of the grade of "special" at a cost of 4¼¢ to 6¾¢ per pound higher than it had contracted with appellants to pay for the same grade of tallow. In the trial court it sought damages upon the basis pleaded but it failed to recover such damages in the trial court. In this court appellee is seeking to recover damages in the sum of $3375, which is a larger sum than it pleaded in the trial court. In this court it bases its claim for damages upon the difference in the contract price of "special" grade tallow and the highest market price for the same grade tallow at any time between the date of the breach of the contract and the date of the trial court's judgment, using 60,000 pounds as the quantity basis for the claim of damages. The contract price was 20½¢ per pound. Appellee contends that the highest market price for "special" grade tallow between the date of the breach of the contract and the date of the trial court's judgment was 26¼¢ per pound, making a difference of 5¾¢ per pound. We failed to find any pleading to support the element of damages claimed by appellee in this court. It is our opinion that appellee was not justified in basing his claim for damages upon one theory in the trial court and upon a failure to recover there, seeking even more damages upon an entirely different theory in this court, especially when the latter theory had not been pleaded by it.

Appellee likewise contends that appellants contracted to sell tallow to it by furnishing a sample thereof as a basis for grade and that they breached the contract by failing and refusing to furnish as high grade of tallow as the sample furnished tested, for which reason it is entitled to judgment for nominal damages at least as a matter of law. The trial court's findings and the record do not support such a claim. Appellants agreed to sell the best grade of tallow to appellee but nothing was said

about furnishing appellee a sample at the time the agreement was made. However, some week or more thereafter, appellants furnished a sample of tallow to appellee and it tested, by a laboratory analysis, "special" grade, or the best grade, but it does not appear that the contract for sale was based upon the furnishing of a sample of the tallow by appellants. After a careful examination of appellee's claim for damages made in this court, the same is overruled.

A careful examination of the record and the briefs reveal to us that the trial court's judgment should be reformed as heretofore stated allowing appellee judgment for the sum of $10,575 with interest thereon from April 26, 1948, at the rate of 6% and the judgment should be otherwise affirmed. Such is the order and judgment of this court. Reformed and affirmed.