# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2011

No. 10-50695

Lyle W. Cayce
Clerk

ARETE PARTNERS, L.P.,

Plaintiff - Appellee

v.

RUDOLF W. GUNNERMAN,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:

Rudolf W. Gunnerman appeals the district court's award to Arete Partners, L.P. of prejudgment interest at the statutory rate of five percent to the date of its final judgment. Gunnerman argues that his deposit of Arete's damages into the registry of the district court should prevent the accrual of prejudgment interest at the statutory rate after that date. Because such a result would be inconsistent with the purpose of prejudgment interest and would undermine the rule applied to awards of prejudgment interest by the Supreme Court of Texas, we affirm the judgment of the district court.

No. 10-50695

## I.  FACTUAL & PROCEDURAL BACKGROUND[1]

Arete Partners, L.P. sued Rudolf Gunnerman for fraud and breach of contract in connection with the sale of securities, and the parties reached a settlement before trial.  Gunnerman stopped making settlement payments to Arete, and Arete filed the instant lawsuit against Gunnerman, alleging that Gunnerman had violated the terms of the settlement agreement and asserting causes of action for breach of contract and fraud.  After a bench trial, the district court found in favor of Arete on both its fraud claim and its breach of contract claim. The district court concluded that, under either the fraud or breach of contract theory, Arete's actual damages were $1,060,649.27, which was the difference between what Arete was entitled to receive under the settlement agreement and what Gunnerman had already paid Arete.  In addition to Arete's actual damages, the district court concluded that Arete was entitled to $500,000 in exemplary damages on its fraud claim.  On its contract claim, Arete was entitled to actual damages plus its attorney's fees.  The district court required Arete to elect between the fraud and breach of contract theories of recovery before entering a final judgment, and Arete elected to recover based on its fraud claim.

Gunnerman appealed the final judgment granting recovery under the fraud theory of liability.  To stay the enforcement of the judgment pending his appeal, Gunnerman asked for, and received, permission to deposit $1,113,469.61 into the registry of the court in lieu of a supersedeas bond.  This amount reflected Arete's actual damages—to which it was entitled under either theory of recovery—plus one year's postjudgment interest of $52,820.34.  The district court deposited the funds in an interest-bearing account.  Gunnerman's appeal was successful, and this court vacated the district court's award of actual and

---

[1] The facts of this case are set out in greater detail in *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 392–94 (5th Cir. 2010).

2

exemplary damages for Arete's fraud claim. *Gunnerman*, 594 F.3d at 398. This court remanded the case to the district court to allow Arete to elect recovery under its breach of contract claim. *Id.* This court's mandate in *Gunnerman* was subsequently amended to allow the district court to award Arete "pre-judgment and post-judgment interest according to law."

On remand, Arete elected to recover on its breach of contract claim. It also sought prejudgment interest at the statutory rate of five percent on its actual damages from November 21, 2005, the date Gunnerman breached the settlement agreement, through the entry of a final judgment awarding Arete damages on its contract claim. Gunnerman conceded that Arete was entitled to its actual damages under a contract theory of liability, but disputed whether Arete was entitled to prejudgment interest at the statutory rate through the date of the district court's second final judgment. Gunnerman claimed Arete was entitled to prejudgment interest at the statutory rate only from November 21, 2005 to October 6, 2006, the date on which Gunnerman deposited the full amount of Arete's actual damages into the registry of the district court. For the remaining time period, Gunnerman argued that Arete was only entitled to whatever interest the amount deposited into the registry actually earned. The district court rejected Gunnerman's argument and entered a final judgment on June 23, 2010, awarding Arete its actual damages of $1,060,649.27 and prejudgment interest at five percent accruing from November 21, 2005 to the date the judgment was entered. Gunnerman appealed.

## II.  LEGAL STANDARDS

In this diversity case, Texas law governs the award of prejudgment interest. *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010). To determine Texas law on the accrual and rate of prejudgment interest, this court first looks to the decisions of the Supreme Court of Texas. *See Transcontinental Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th

No. 10-50695

Cir. 1992) ("In order to determine state law, federal courts look to final decisions of the highest court of the state.").

We review the district court's award of prejudgment interest for an abuse of discretion. *Int'l Turbine Servs., Inc. v. VASP Braz. Airlines*, 278 F.3d 494, 499 (5th Cir. 2002). A district court abuses its discretion when "its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citation omitted).

## III. ANALYSIS

The issue in this case is whether the district court committed legal error when it awarded Arete interest at the statutory rate from the date of Gunnerman's breach of the settlement agreement to the date of its final judgment awarding Arete actual damages based on a contract theory of recovery. Gunnerman urges this court to conclude that his deposit of the full amount of Arete's actual damages into the court's registry on October 6, 2006, stopped the accrual of prejudgment interest at the statutory rate. Instead, according to Gunnerman, Arete is only entitled to the interest that actually accrued on the funds in the registry.[2]

To address Gunnerman's arguments, we look to the decisions of the Supreme Court of Texas on the purpose of prejudgment interest and the rate at which it accrues. By way of background, the Texas Finance Code defines interest as "compensation for the use, forbearance, or detention of money." TEX. FIN. CODE ANN. § 301.002(a)(4) (West 2006). Recent Supreme Court of Texas decisions place particular emphasis on the fact that prejudgment interest is intended to compensate a plaintiff for the " 'lost use of the money due as

---

[2] According to Gunnerman's brief, prejudgment interest at the statutory rate would be "greatly in excess of the interest actually earned on Gunnerman's cash deposit" into the registry of the court. Brief of Appellant at 4.

No. 10-50695

damages during the lapse of time between the accrual of the claim and the date of judgment.'" *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)); *see also Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 816 (Tex. 2006) (same). The Supreme Court of Texas's rationale for this approach is that a plaintiff is not otherwise fully compensated by the amount of damages sustained at the time of the wrong (the breach of a contract or the infliction of a tortious injury) because he has "been denied the opportunity to invest and earn interest on the amount of damages between the time of the occurrence and the time of judgment." *Cavnar*, 696 S.W.2d at 552. Earlier decisions also focused on prejudgment interest as compensation for a defendant's unauthorized use of funds belonging to a plaintiff. *See Republic Nat. Bank of Dallas v. Northwest Nat. Bank of Fort Worth*, 578 S.W.2d 109, 117 (Tex. 1978); *Philips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485–87 (Tex. 1978). The plaintiff's lost use of money and the defendant's unauthorized use of the plaintiff's money are, in many cases, flip sides of the same coin, *see, e.g., Stahl Petroleum Co.*, 569 S.W.2d at 487 (involving a debtor who "was holding and using money of the [creditor] without its consent"), such that the plaintiff is entitled to compensation regardless of how the court expresses the purpose of prejudgment interest.

In this case, Gunnerman claims that because he deposited funds in the amount of Arete's actual damages into the registry of the district court, there would be no justification for awarding Arete prejudgment interest at the statutory rate as compensation for Gunnerman's use of those funds after that date. This argument overlooks the fact that the interest on the funds in the registry of the court will be used to satisfy Gunnerman's obligation to pay prejudgment interest. So, in a real sense, the money is still working for him. More important, Arete's loss of use of the funds represented by the judgment has

No. 10-50695

in no way been assuaged by Gunnerman's decision to deposit those funds into the registry of the district court. Arete is still unable to use the money, although Arete has security for it. Arete is entitled to be compensated for this lost use, irrespective of whether Gunnerman has the use of those funds.[3]

Having established that Gunnerman's deposit of Arete's actual damages into the registry of the district court did not alter Arete's entitlement to prejudgment interest on those funds, we next turn to the question of the applicable rate of prejudgment interest. Our decision regarding the proper rate of interest is informed by several decisions by the Supreme Court of Texas, some of which have been discussed above.

In *Johnson & Higgins*, the Supreme Court of Texas addressed whether the calculation of prejudgment interest for a contract claim was governed by statute or by general principles of equity developed at common law. 962 S.W.2d at 528. Before the Supreme Court's decision in *Cavnar*, prejudgment interest was available at common law only when damages were certain. *Cavnar*, 696 S.W.2d at 553. *Cavnar* adopted a rule that a plaintiff could recover prejudgment interest in personal injury, wrongful death, and survival actions. *Id.* at 554. *Cavnar* held that, for these claims, prejudgment interest would be calculated at the statutory rate, compounded daily, and begin to accrue "six months after the occurrence of the incident giving rise to the cause of action." *Id.* at 554–55 Although *Cavnar* applied to personal injury and property damage claims, subsequent courts expanded its holding to non-physical damage contexts. *See, e.g., Perry Roofing Co.*, 744 S.W.2d at 930 (awarding equitable prejudgment

---

[3] In addition to compensating a plaintiff for the lost use of funds, a potential award of postjudgment interest is intended to: (1) encourage settlement; and (2) expedite "both settlements and trials by removing incentives for defendants to delay without creating such incentives for plaintiffs." *Johnson & Higgins*, 962 S.W.2d at 529 (citing *Cavnar*, 696 S.W.2d at 554–55, and *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex. 1988)). Concluding that the deposit of funds into the registry of the court prevents the accrual of prejudgment interest at the statutory rate would not advance either of these goals.

interest in contract claim for unascertainable damages); *City of Houston v. Wolfe*, 712 S.W.2d 228, 229 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd) (eminent domain).

After *Cavnar* was decided, the Texas Legislature, as part of a larger tort reform scheme, partially codified the *Cavnar* rule under Section 6 of the prejudgment interest statute, which read: "Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest." TEX. REV. CIV. STAT. ANN. art. 5069–1.05, § 6(a) (West 1996) (current version at TEX. FIN. CODE ANN. § 304.102 (West 2006)). Similar to *Cavnar*, Section 6 provided that the rate of prejudgment interest would be the same as postjudgment interest. *Id.* § 6(g) (current version at TEX. FIN. CODE. ANN. § 304.103). Unlike *Cavnar*, however, the accrual period under Section 6 provided that prejudgment interest would accrue on the earlier of "(1) 180 days after the date the defendant receives written notice of the claim or (2) the day the suit is filed," and interest was to be calculated as "simple interest." *Id.* § 6(a), (g) (current version at TEX. FIN. CODE ANN. § 304.104).

In *Johnson & Higgins*, the court concluded that the plaintiff's contract claim did not fall under any of the categories of injury enumerated in Section 6, so "any award of prejudgment interest [was] governed by the common law." 962 S.W.2d at 530. Nevertheless, the *Johnson & Higgins* court decided to "adopt the Legislature's approach to prejudgment interest" and held that "prejudgment interest [on the contract claim] begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date the suit is filed." *Id.* at 531. *Johnson & Higgins* also adopted the language that the Legislature used to calculate prejudgment interest, stating that "prejudgment interest accrues at the rate for postjudgment interest and it shall be computed as simple interest." *Id.* at 532. The *Johnson & Higgins* court reasoned that adoption of the Legislature's approach for all common law claims would ensure

symmetry in the accrual period for prejudgment interest and the calculation of prejudgment interest. *Id.* at 533.

Although, as the foregoing demonstrates, *Johnson & Higgins* was not primarily occupied with the *rate* of prejudgment interest—which was traditionally calculated at the statutory or "legal rate," *see Miner-Dedrick Constr. Corp. v. Mid-County Rental Servs., Inc.*, 603 S.W.2d 193, 200 (Tex. 1980) (awarding interest at statutory rate on a contract claim with specified damages); *Close v. Fields*, 13 Tex. 623, 623 (Tex. 1855) ("[T]he legal rate of interest is the safest criterion or standard of damages . . . .")—*Johnson & Higgins* created a unified system for the calculation of both statutory prejudgment interest and common law prejudgment interest, a necessary component of which was the reaffirmation that prejudgment interest accrued at the statutory rate for common law claims. Indeed, shortly after *Johnson & Higgins* was decided, the Supreme Court of Texas reemphasized that *Johnson & Higgins* has "aligned the rate of prejudgment interest and the date on which it commences to accrue under the common law" with the statutory provisions regarding the calculation of interest. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 462 (Tex. 1998); *see also* 5 ROY W. MCDONALD & ELAINE A. CARLSON, TEXAS CIVIL PRACTICE § 27:31[d] at 44 (2d ed. Supp. 2010) (noting that "statutory provisions pertaining to the accrual timeframe, the rate of interest, and whether interest should be calibrated as simple interest" control the calculation of prejudgment interest awarded as an equitable remedy).

Thus, under Texas law, whether entitlement to prejudgment interest is derived from statute or, as in this case, equity, "prejudgment interest accrues at the rate for postjudgment interest and [is] computed as simple interest." *Johnson & Higgins*, 962 S.W.2d at 532. In relevant part, the applicable statute sets postjudgment interest at either "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation" or "five

percent a year if the prime rate as published by the Board of Governors . . . is less than five percent." TEX. FIN. CODE ANN. § 304.003(c)(1)–(2).[4] This provision sets a "floor interest rate" of five percent on postjudgment interest, *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 255 (Tex. 2008), which correspondingly sets a five percent floor on prejudgment interest, *see Johnson & Higgins*, 962 S.W.2d at 532; *Harris v. Mickel*, 15 F.3d 428, 431–32 (5th Cir. 1994) (regarding a prior version of the statute that applied a higher interest rate).

If this court were to accept Gunnerman's position that the rate earned by the funds in the registry of the district court should control, it would have the effect of undercutting the floor rate of interest established by statute. There is no dispute that if Gunnerman had posted a supersedeas bond rather than depositing the amount of Arete's actual damages into the registry of the district court, Gunnerman would have been liable for prejudgment interest at the statutory rate through the date of the second judgment. Gunnerman was entitled to elect this means of suspending the judgment to pursue his first appeal, and those funds have accrued some interest. But his election does not affect the rules settled on by the Supreme Court of Texas and the Texas Legislature governing the rate at which Arete is compensated for its continued inability to use those funds.

We note that, in certain contexts not applicable to the facts of this case, the Supreme Court of Texas has recognized that depositing funds into the registry of the district court may prevent the accrual of prejudgment interest. For instance, the Supreme Court of Texas has consistently held that prejudgment interest does not accrue on funds to which the plaintiff has access prior to the

---

[4] There is no dispute that, in this case, the prime rate was below five percent when the district court awarded Arete prejudgment interest.

No. 10-50695

final judgment.[5]   *See Brainard*, 216 S.W.3d at 816 (prejudgment settlement payments); *Shambry v. Housing Auth. of City of Dallas*, 255 S.W.2d 184, 185 (Tex. 1953) (per curiam) (affirming *Housing Auth. of City of Dallas v. Shambry*, 252 S.W.2d 965, 966 (Tex. Ct. App.–Austin 1952, writ ref'd), in which prejudgment interest did not accrue on money in the registry of the court because "such amount could have been withdrawn by [the prevailing parties]"); *Olivares v. Garcia*, 91 S.W.2d 1059, 1062 (Tex. 1936) (tender of debt); *see also Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 353–54 (5th Cir. 1980) ("In order to stop the accrual of interest [defendant] had to make the money available to [plaintiff] without attempting to impose conditions on its acceptance."). These decisions are consistent with the proposition that prejudgment interest should be awarded to compensate a plaintiff for his lost use of the funds represented by the judgment; if the plaintiff can access those funds without condition, then there is no need to compensate him in the event he does not. That said, these holdings are inapposite here because Gunnerman's deposit of the funds into the registry of the district court, like a supersedeas bond, *prevented* Arete from receiving its damages by suspending the enforcement of the judgment.

Nor are we persuaded to adopt Gunnerman's position by the general rule in the Texas courts that a stakeholder who interpleads contested funds into the registry of the court is not liable for prejudgment interest after the date of the interpleader. *See State Farm Ins. Co. v. Martinez*, 216 S.W.3d 799, 808 (Tex.

---

[5] This approach is consistent with that taken in many other jurisdictions. *See Blasini-Stern v. Beech-Nut Life Savers Corp.*, 429 F. Supp. 533, 535 (D. P.R. 1975) (Puerto Rican law); *Family Fed. Sav. Bank v. Hughes*, 877 S.W.2d 609, 611 (Ky. 1994); *Dollar Inv. Corp. v. Modern Market, Inc.*, 365 P.2d 1117, 1117 (Nev. 1961); *Forbes v. Am. Bldg. Maint. Co. W.*, 240 P.3d 790, 794–95 (Wash. 2010); *De Toro v. DI-LA-CH, Inc.*, 142 N.W.2d 192, 196 (Wis. 1966); *but see Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990) (stating, in an ERISA case, that the "appropriate rate of prejudgment interest for funds on deposit in the registry is the rate those funds earn *in* the registry" (emphasis in original)).

2007) (stating rule);[6] *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 369–70 (5th Cir. 1975) (same).  The rule regarding liability for prejudgment interest in interpleader cases is best understood as serving the distinct purpose of an interpleader action, which encourages the stakeholder to look to the courts to resolve competing claims over funds.  *State Farm*, 216 S.W.3d at 806.  In that context, it would be counterproductive to require the stakeholder to compensate the eventual recipient of the funds with additional prejudgment interest after it has relinquished the disputed funds.  *Cf. id.* ("Assessing penalty interest and attorney's fees after an interpleader is filed would punish insurers for doing exactly what Texas law encourages.").

Finally, we acknowledge that some intermediate courts of appeals in Texas have stated that the deposit of funds into the registry of the trial court prevents the accrual of prejudgment interest on those funds.  Because these cases could be read as support for the proposition that common law prejudgment interest does not accrue on funds deposited into the registry of the court in a contract case, which is an issue the Supreme Court of Texas has not squarely addressed, we must make an "*Erie* guess" as to whether the Supreme Court would apply *Johnson & Higgins* or these intermediate appellate decisions to this case.  *See, e.g., Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

These intermediate appellate court decisions fall into two categories:  (1) those decided before *Johnson & Higgins*; and (2) those decided after *Johnson & Higgins* but which have dubious applicability to the facts of this case.  With respect to the first category of cases, we are not persuaded that the Supreme

---

[6] The Supreme Court of Texas's holding in *State Farm* is doubly inapplicable here.  The *State Farm* court reasoned that requiring the insurer who had interpleaded the funds to pay prejudgment interest at the statutory rate and allowing the plaintiff to recover interest that accrued on the interpleaded funds would amount to double recovery.  216 S.W.3d at 808.  There is no risk of double recovery in this case: Arete seeks only interest at the statutory rate on the amount of the judgment, not prejudgment interest at the statutory rate *plus* the amount of interest that has accrued on the funds into the court registry.

No. 10-50695

Court of Texas would undermine the general rule that common law prejudgment interest on a contract claim accrues at the statutory rate for postjudgment interest, *see Johnson & Higgins*, 962 S.W.2d at 532, by applying a rule announced in older intermediate appellate court decisions.[7]

Nor do we believe that the Supreme Court of Texas would follow post-*Johnson & Higgins* decisions by two intermediate appellate courts, which hold that prejudgment interest did not accrue on funds placed in the registry of the district court. In *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112 (Tex. App.–Corpus Christi 1999, pet. denied), the court made the flat statement that the plaintiff "should not be entitled to prejudgment interest on money that [the defendant] had already paid into the registry of the court." *Id.* at 125. But, in its next breath, the *Pegasus* court affirmed the trial court's application of the funds in the registry in a seemingly contrary manner: the plaintiff was "entitled to all monies held in the Registry of the Court to satisfy

---

[7] Gunnerman cites several pre-*Johnson & Higgins* decisions by intermediate Texas appellate courts for the proposition that prejudgment interest does not accrue on funds deposited into the registry of the district court. *See MCZ, Inc. v. Smith*, 707 S.W.2d 672, 677 (Tex. App.–Houston 1986, writ ref'd n.r.e.); *Veale v. Rose*, 657 S.W.2d 834, 840 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.); *Anderson v. Havins*, 595 S.W.2d 147, 158 (Tex. App.–Amarillo 1980, writ dism'd); *see also Kishi v. Humble Oil & Ref. Co.*, 10 F.2d 356, 357 (5th Cir. 1925). In addition to pre-dating *Johnson & Higgins*, these cases are inapplicable to this case because the sole consideration for awarding or denying prejudgment interest was whether the plaintiff should be compensated for defendant's wrongful use of the plaintiff's funds. These courts did not consider, as the court highlighted in *Johnson & Higgins*, and is relevant in this case, whether the plaintiff was entitled to prejudgment interest as compensation for the plaintiff's lost use of those funds. *See MCZ*, 707 S.W.2d at 677 ("A court can award prejudgment interest upon equitable principles to compensate one for another's possession and use of his funds."); *Veale*, 657 S.W.2d at 840 ("The recovery of interest damages under the equitable doctrine has consistently rested squarely and solely on the idea of compensation for the unauthorized *use* of another's money."); *Anderson*, 595 S.W.2d at 158 (declining to award prejudgment interest because the "money was never in the hands, or under the control of the sellers"); *see also Kishi*, 10 F.2d at 357 (stating that defendants "had the use of [plaintiff's] money . . . and therefore ought to pay interest as an incident to the principal debt"). Additionally, some of the cases cited by Gunnerman are inapposite because they involve either interpleader, *see MCZ*, 707 S.W.2d at 677; *Kishi*, 10 F.2d at 357, or an unconditional tender of funds into the registry of the court, *see Veale*, 657 S.W.2d at 840.

the judgment with any interest earned on such monies in the registry credited against the interest awarded" and the "total amount" in the court's registry was "credited against any judgment amount owed by [the defendant]."[8] *Id.* (quoting trial court order). The only error the *Pegasus* court found in the trial court's calculation of prejudgment interest was that it should have been calculated as simple, rather than compound interest, an issue which is not in dispute in this case. *Id.* Therefore, the *Pegasus* court's announcement that prejudgment interest does not accrue on funds in the registry of the trial court may not have been given any operative effect in its actual holding (we confess to being uncertain on that point), and we do not believe the Supreme Court of Texas would rely on *Pegasus* as authority for Gunnerman's position.

Following *Pegasus*, the Corpus Christi court and one other Texas intermediate appellate court applied the *Pegasus* court's statement that prejudgment interest does not accrue on funds deposited in the registry of the court. But those decisions are better understood as interpleader-type cases where the funds in the registry of the court could have been subject to multiple claims. *See Hoeffner, Bilek & Eidman, L.L.P. v. Guerra*, 2004 WL 1171044, at *10–11 (Tex. App.–Corpus Christi, May 27, 2004, pet. denied) (mem. op.) (applying *Pegasus* in a case involving dispute between several attorneys to contingency fees earned in a mass tort litigation where attorney seeking funds had requested funds be deposited in registry); *Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 646, 648 (Tex. App–Austin 2000, pet. denied) (applying *Pegasus* in a case involving dispute over amount of royalties owed under pooling agreement for "horizontal wells that contain multiple drillsites on tracts owned by multiple

---

[8] Our reading of the *Pegasus* court's actual holding is confirmed (to an extent) by the fact that both parties operate under the assumption that *Pegasus* supports the district court's calculation of prejudgment interest in this case. Brief of Appellant at 13 n.3; Brief of Appellee at 10.

landowners"). As discussed above, the rule that prejudgment interest does not accrue on interpleaded funds is inapplicable in this case

In this case, there has already been a judicial determination that Gunnerman owed Arete its actual damages on two distinct theories of recovery. Arete's theory of recovery for its actual damages was relevant only to whether it received exemplary damages (fraud) or attorney's fees (breach of contract). Gunnerman's deposit of funds into the registry of the court allowed Gunnerman to suspend enforcement of the judgment during its challenge to one of the two independent bases for Arete's actual damages. We are not persuaded that, under these particular circumstances, the Supreme Court of Texas would rely on a rule discussed in factually distinguishable intermediate appellate court decisions and conclude that prejudgment interest does not accrue at the statutory rate on the funds Gunnerman placed into the registry of the court in lieu of a supersedeas bond. *See Howe*, 204 F.3d at 627 (stating that, when making an *Erie* guess, this court is not bound by decisions of intermediate appellate courts if "convinced by other persuasive data that the highest court of the state would decide otherwise"). Instead, it is our *Erie* guess that the Supreme Court of Texas would hew to the general rule announced in *Johnson & Higgins* and award Arete prejudgment interest at the statutory rate from the date of the breach of the settlement agreement to the date of the second judgment. *See Johnson & Higgins*, 962 S.W.2d at 532.

Our conclusion is buttressed by Texas courts' treatment of similar deposits on the rate of postjudgment interest.[9] Several intermediate appellate courts have held that depositing funds into the registry of the court does not suspend

___

[9] We are aware, of course, that federal law governs the award of postjudgment interest in a diversity suit. *See, e.g., Meaux*, 607 F.3d at 173. However, we believe that the manner in which Texas courts calculate postjudgment interest when funds have been deposited into the registry of the court sheds further light on how the Supreme Court of Texas would calculate prejudgment interest this case.

the statutory rate of postjudgment interest. *See Hoeffner*, 2004 WL 1171044 at *11 (awarding postjudgment interest at the statutory rate despite deposit of funds in the registry of the court because there is "no authority allowing the imposition of postjudgment interest at the rate earned by funds in the registry of the court"); *Lowe v. Monsanto*, 965 S.W.2d 741, 742 (Tex. App.—El Paso 1998, pet. denied) (per curiam) (concluding that deposit in registry of the district court must include the amount of "interest for the estimated duration of the appeal" and remanding to trial court for evidence on the "proper amount of post-judgment interest"); *First State Bank of Rogers v. Wallace*, 788 S.W.2d 41, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ) (awarding postjudgment interest at the statutory rate on funds deposited in the registry of the court because appeal "delayed [judgment creditor's] rightful receipt of the funds" but crediting interest accrued on funds in the registry of the court against that amount). These decisions are consistent with the statutory scheme governing postjudgment interest, under which postjudgment interest accrues at the statutory rate until the judgment is paid, *see* TEX. FIN. CODE. ANN. § 304.005(a), and the party seeking to suspend enforcement of the judgment must provide security for interest that will accrue, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a) (West 2008) (stating that the amount of security on a judgment for money must include "interest for the estimated duration of the appeal"). As the *Johnson & Higgins* court held, common law prejudgment interest accrues on a contract claim at the statutory rate for postjudgment interest. 962 S.W.2d at 532. We think it unlikely, therefore, that the Supreme Court of Texas would permit prejudgment interest to accrue below the statutory rate simply because the judgment debtor deposited funds into the registry of the district court in lieu of a supersedeas bond.

No. 10-50695

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.