

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00239-CV

**LAW OFFICE OF OSCAR C. GONZALEZ, INC.**, and Oscar C. Gonzalez,
Appellants

v.

Isabel **SLOAN**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-14280
Honorable Larry Noll, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  August 29, 2014

REVERSED AND RENDERED IN PART; AFFIRMED IN PART

Oscar C. Gonzalez, individually, and the Law Office of Oscar C. Gonzalez, Inc. appeal the

trial court's judgment against them[1] awarding Isabel Sloan actual damages plus treble damages

and attorney's fees under the Texas Deceptive Trade Practices Act ("DTPA").  TEX. BUS. & COM.

CODE ANN. §§ 17.41-.50 (West 2011 & Supp. 2014).  Sloan's DTPA claim was based on alleged

deceptive conduct by Gonzalez in failing to disclose the disciplinary history of another lawyer to

---

[1] The judgment is rendered against Oscar Gonzalez, the Law Office of Oscar C. Gonzalez, Inc., and Eric Turton "jointly and severally."  Turton does not appeal.

whom Sloan's case was referred and that the lawyer would not be supervised by Gonzalez. We conclude the DTPA claim and the other non-negligence claims raised by Sloan are components of an improperly fractured professional negligence claim. We further conclude the evidence is sufficient to support the jury's finding that Gonzalez and the Law Office were negligent in their failure to safeguard Sloan's settlement proceeds. We therefore reverse the judgment based on Sloan's DTPA cause of action, and render judgment against Gonzalez and his Law Office based on the jury's finding of professional negligence. We affirm the trial court's imposition of a constructive trust on certain assets held by Gonzalez and his Law Office.

## BACKGROUND

Attorney Oscar C. Gonzalez practices law through his own incorporated law firm called the "Law Office of Oscar C. Gonzalez, Inc." (the "Law Office"). During the relevant time period, Eric R. Turton, a licensed lawyer, had an office in the space owned by Gonzalez and the Law Office and paid rent and his share of overhead expenses. Gonzalez would often originate a case and refer it to Turton to work on, with Gonzalez taking 50% of the fee. On other occasions, Gonzalez and Turton would work on a case together and the fees from such a joint case would be deposited in an "office account" they shared. According to Turton, Gonzalez always set the fee on referred and joint cases. Turton stated that this course of dealing had been in effect since the 1990s.

On May 27, 2004, Isabel Sloan called the Law Office and spoke to Gonzalez about hiring him to represent her in a matter concerning the estate of her older sister,[2] who had recently passed away. Sloan obtained Gonzalez's name from her husband's uncle, Ron Wolff. According to Sloan, during the five to ten minute phone conversation, she explained her relationship to Wolff

---

[2] Sloan's sister and her husband had legally adopted Sloan many years before.

and the circumstances surrounding her sister's death and estate. Gonzalez asked Sloan for her phone number and social security number, which she provided. Gonzalez told her he did not handle probate matters but stated he would work with another attorney, Eric Turton, on the matter if she paid a retainer fee of $2,500. Gonzalez also mentioned a contract and quoted his hourly rate as $300 and Turton's hourly rate as $200.

The next day, Sloan met with Turton at the Law Office; Gonzalez was not present. Sloan decided to try to work out the matter and postponed hiring an attorney at that time. Two months later, after Sloan learned a probate proceeding had been instituted, she decided to proceed with hiring an attorney. On July 12, 2004, Turton sent Sloan an "Attorney Consultation and Fee Contract" (the "Employment Agreement") along with a cover letter on the Law Office letterhead. Turton stated the Employment Agreement was a standard form used by Gonzalez and his Law Office. Sloan signed the agreement on July 19, 2004, and returned it along with a check made payable to the Law Office for the $2,500 retainer fee. The $2,500 check shows it was endorsed by the Law Office and deposited into Turton's IOLTA trust account. The Employment Agreement recites that it is made "in the Law Office of Oscar C. Gonzalez, Inc., between Isabel Sloan . . . and Law Offices of Oscar C. Gonzalez and Eric R. Turton ('Attorneys')." It goes on to state that Sloan "hereby retains and employs the Attorney" to represent her, and lists the hourly rates for Gonzalez at $300.00 and for Turton at $200.00. The Employment Agreement further states, "if [at] any time any of the above attorney's [sic] should be working simultaneously on this case the total hourly charge will be $300.00 to [the] client." The agreement twice recites that Sloan agrees to "deposit a non-refundable retainer of $2,500.00 to the Law Offices of Oscar C. Gonzalez, Inc." Finally, the agreement recites that it is the sole legal fee agreement between the parties and supersedes any prior understandings. At the end of the Employment Agreement, there is a signature block for

"Law Office of Oscar C. Gonzalez, Inc." with the firm's address and phone number and a signature line for Gonzalez, individually. The agreement was signed by Sloan, but not by Gonzalez.

On July 27, 2004, the "Law Offices of Oscar C. Gonzalez" filed a notice of appearance as counsel for Sloan in the probate proceeding. Turton signed the notice of appearance below the Law Office signature block. For the next four years, Turton represented Sloan in the probate proceeding. Sloan stated the correspondence she received from Turton was initially on the Law Office letterhead and later on Turton's own letterhead. For example, pleadings filed in 2006 were signed by Turton under a signature block for the "Law Office of Eric R. Turton." Sloan stated she thought nothing of the difference because she believed that both Turton and Gonzalez were her attorneys. Turton occasionally told her that he had spoken with Gonzalez about various matters involved in her case. Turton testified he did in fact verbally consult with Gonzalez at various stages of Sloan's case. Sloan never spoke with Gonzalez again after her initial phone conversation, and never received a bill from Gonzalez for his time.

Turton successfully settled Sloan's case in 2008. The settlement check for $100,000 was made payable jointly to Turton and Sloan. Turton endorsed both signatures, which the Employment Agreement authorized, and deposited the $100,000 into his IOLTA account on March 3, 2008. The next day, Turton wrote a check to Gonzalez for rent out of his (Turton's) IOLTA account. In January 2009, Sloan received a letter stating she might owe taxes and called Turton inquiring if the settlement funds had been received. On January 15, 2009, Turton paid Sloan $25,000 with a check drawn on his IOLTA account, and indicated in a cover letter that the balance of the settlement had not yet been received and would be paid when the estate was closed. Turton misapplied the remaining $75,000 of Sloan's settlement proceeds by using funds from his IOLTA account to pay his personal and business expenses. Some of the IOLTA funds were used to pay Gonzalez and/or the Law Office for Turton's rent and overhead expenses. Turton

subsequently admitted his liability for misapplying the settlement funds owed to Sloan, and was disbarred.

Sloan sued Turton and Gonzalez individually, along with the Law Office, asserting causes of action for negligence and gross negligence, breach of fiduciary duty, money had and received/conversion, and violation of the DTPA. Sloan alleged that Gonzalez and his Law Office were equally responsible with Turton for representing her interests, including safeguarding her client funds. Sloan also alleged that Gonzalez and the Law Office committed misapplication and theft due to the knowing receipt of trust funds from Turton. Sloan sought recovery of $75,000 in actual damages and forfeiture of the $2,500 attorney's fee paid, plus "interest as damages" on the misapplied fiduciary funds, exemplary damages, treble damages under the DTPA, and imposition of a constructive trust on the misapplied funds. Turton filed a cross-claim suit against Gonzalez which was severed from Sloan's case.

At trial, Sloan's basic theory against Gonzalez and his Law Office was that Gonzalez was also her attorney and owed her the same duties as Turton, including managing and protecting her settlement funds. Sloan raised no complaints regarding Turton's representation leading up to the settlement; all her claims stemmed from the failure to safeguard her client funds and the misapplication of her funds. Sloan also asserted that Gonzalez failed to inform her of Turton's substantial disciplinary history and that he (Gonzalez) would not "work with" or supervise Turton on her case. Sloan claimed these omissions led her to sign the Employment Agreement with the Law Office and to agree to Turton's representation of her, which ultimately led to the misapplication of her settlement money. Sloan conceded that Turton was a licensed attorney during the time he represented her, but testified that if she had been told of Turton's prior professional misconduct and suspensions she would never have agreed to his representation or his access to her settlement money, especially without Gonzalez's participation or oversight. Sloan

testified that, based on her phone conversation with Gonzalez and the terms of the written Employment Agreement with the Law Office, she believed that she had a contract with both attorneys, Gonzalez and Turton, and that both attorneys were responsible for safeguarding her settlement money.

Gonzalez's defense at trial was that he never intended to represent Sloan and had no attorney-client relationship with her. Gonzalez testified that Turton was Sloan's only attorney and that Turton was not employed by the Law Office. The Employment Agreement was admitted into evidence, along with handwritten notes which match the information Sloan says she gave Gonzalez on the phone. Gonzalez testified that the notes were from his phone conversation with Wolff, and stated he did not recall ever speaking to Sloan. Gonzalez testified he told Wolff that he did not handle probate matters, but that Eric Turton did. Gonzalez testified that his habit was to send a non-engagement letter if he had spoken with a prospective client and decided his Law Office did not want the case; no evidence was produced showing that any such letter was sent to Sloan. Gonzalez's defense was also focused on his testimony that, although he knew of Turton's disciplinary history, it was not foreseeable to him that Turton would engage in a criminal act by misapplying Sloan's settlement money.

At the conclusion of the evidence, the court submitted a jury charge on seven alternative theories of liability: (1) breach of fiduciary duty; (2) common law failure to disclose; (3) fraud;[3] (4) violation of the DTPA; (5) negligent misrepresentation; (6) professional negligence; and (7) money had and received. The jury returned a verdict for Sloan on all her theories of liability and awarded actual damages of $77,500 under each theory except for breach of fiduciary duty, which actual damages consisted of the $75,000 in misappropriated settlement funds plus forfeiture of the

---

[3] Fraud is not pled as a cause of action in Sloan's petition.

$2,500 retainer paid by Sloan. Even though the jury made affirmative findings against Gonzalez and the Law Office of gross negligence and malice, as well as criminal conduct in the form of theft and intentional misapplication, the jury indicated in a note that it could not agree on a specific amount of exemplary damages; therefore, no exemplary damages were awarded on Sloan's non-DTPA claims.

Sloan elected to recover under her DTPA claim, which included actual damages, treble damages, and recovery of her attorney's fees. In her DTPA claim, Sloan pled that Gonzalez and his Law Office "failed to disclose . . . that fact, known to those Defendants at the time, that Eric Turton was unfit to practice law and had a relevant and dismal disciplinary history, and that he would be unsupervised by those Defendants, in order to induce [Sloan] into a transaction she would not have otherwise entered, in violation of Section 17.46(b)(24), Tex. Bus. & Comm. Code."[4] The jury was asked in Question No. 11 whether Gonzalez and his Law Office engaged in "any false, misleading, or deceptive act or practice that Isabel Sloan relied on to her detriment and that was [a] producing cause of damages to Isabel Sloan?" The jury was instructed that a "'[f]alse, misleading, or deceptive act or practice' means the failure to disclose information about services that were known at the time of the transaction with the intention to induce Isabel Sloan into a transaction she otherwise would not have entered into if the information had been disclosed." TEX. BUS. & COM. CODE ANN. § 17.46(a), (b)(24) (West 2011). The jury made an affirmative finding against both Gonzalez and the Law Office.

The trial court rendered judgment against Gonzalez, the Law Office, and Turton jointly and severally for $77,500 in economic damages plus $64,125 in "interest as damages" based on

---

[4] Sloan also alleged that Gonzalez and the Law Office violated the DTPA by "engag[ing] in an unconscionable act or course of action by accepting IOLTA checks for over three years from Eric Turton for law office rent and expenses," but this theory was not submitted to the jury.

the jury's finding that all three defendants intentionally misapplied the $75,000 in fiduciary property[5] for a total actual damages award of $141,625. The court also awarded Sloan treble damages of $424,875 based on the jury's finding of "knowing" and "intentional" deceptive conduct and $238,366 in attorney's fees. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(A), (b)(1) (West 2011). In addition to assessing post-judgment interest and costs of court, the judgment also imposes a constructive trust on two bank accounts and the proceeds from the sale of real property held by Gonzalez and/or the Law Office. Gonzalez and the Law Office now appeal.

## FRACTURING OF PROFESSIONAL NEGLIGENCE CLAIM

We begin by determining whether Sloan's DTPA claim, along with her other non-negligence claims, are the result of improper fracturing of what is, at its crux, a professional negligence claim. The issue is a question of law which we review de novo. *Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.); *Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied). In determining the issue, we are guided by the law characterizing legal malpractice claims and the rule prohibiting malpractice plaintiffs from "opportunistically" transforming negligence claims into other claims. *Riverwalk*, 391 S.W.3d at 236.

Gonzalez and the Law Office argue in Issue No. 5 that Sloan's DTPA claim and all of her other non-negligence claims are predicated on conduct that amounts to negligence and, thus, are merely components of a fractured legal malpractice claim rather than independent causes of action.

---

[5] In the second phase of trial on the issue of exemplary damages, the jury found that all three defendants intentionally misapplied Sloan's trust funds and committed theft in excess of $20,000. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.009 (West 2008); *id.* § 41.008(c) (West Supp. 2014) (cap on exemplary damages does not apply if conduct is based on intentional commission of a designated felony, including misapplication of fiduciary property). As noted, the jury was not able to unanimously agree on a dollar amount of exemplary damages. *See id.* § 41.003(d) (West Supp. 2014).

Texas law does not permit a plaintiff to fracture legal malpractice claims into separate claims. *O'Donnell v. Smith*, 234 S.W.3d 135, 146 (Tex. App.—San Antonio 2007), *aff'd*, 288 S.W.3d 417 (Tex. 2009). A legal malpractice claim is based on negligence and arises from an attorney's failure to exercise ordinary care. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989); *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., PC.*, 284 S.W.3d 416, 426 (Tex. App.—Austin 2009, no pet.) (attorneys owe their clients the duty to act with ordinary care, in a manner consistent with the standard of care expected to be exercised by a reasonably prudent attorney). Thus, a legal malpractice claim is dependent on the existence of an attorney-client relationship. *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996) (attorney owes a duty of care only to his client, and privity rule requires this relationship as a predicate for legal malpractice claim); *Gamboa v. Shaw*, 959 S.W.2d 662, 664-65 (Tex. App.—San Antonio 1997, no pet.); *see Swank v. Cunningham*, 258 S.W.3d 647, 666 (Tex. App.—Eastland 2008, pet. denied) (applying privity rule). Therefore, we must first determine whether an attorney-client relationship existed between Sloan and Gonzalez/the Law Office.

Despite Gonzalez's arguments to the contrary, the evidence shows that an attorney-client relationship was formed between Sloan and Gonzalez and his Law Office. As detailed, *supra*, the written Employment Agreement signed by Sloan stated it was made between Sloan as the "Client" and the "Law Offices of Oscar C. Gonzalez" as well as Turton, both of which it defined as the "Attorney**s**" being employed. (emphasis added). The Employment Agreement further contained the individual hourly rates for Gonzalez and Turton and provided the hourly rate for simultaneous work by both attorneys. Sloan's retainer check was made payable to the Law Office and was endorsed by the Law Office. The Law Office, not Turton individually, then entered an appearance as counsel for Sloan in the probate proceeding. Even though Turton later filed some pleadings under his own letterhead as the "Law Office of Eric R. Turton," the record does not show that the

Law Office of Oscar Gonzalez ever withdrew as attorney of record for Sloan. The existence of an attorney-client relationship between Sloan and Gonzalez and his Law Office is thus proven by an express agreement. *See Byrd v. Woodruff*, 891 S.W.2d 689, 700 (Tex. App.—Dallas 1994, writ denied) (contractual relationship between attorney and client may be either express or implied from the parties' conduct).

The existence of an attorney-client relationship gives rise to a duty on the attorney's part to act with ordinary care, in other words, in a manner consistent with the standard of care expected to be exercised by a reasonably prudent attorney. *Cosgrove*, 774 S.W.2d at 664. An attorney must use "the utmost good faith in dealings with the client" and "reasonable care in rendering professional services to the client." *Byrd*, 891 S.W.2d at 700; *see also Meyer v. Cathey*, 167 S.W.3d 327, 330-31 (Tex. 2005) (per curiam) (in a formal relationship such as an attorney-client relationship a fiduciary duty arises as a matter of law). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT §§ 1.01-8.05, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, App. A, art. X (West 2013 & Supp. 2014) (rules defining attorney's responsibilities within an attorney-client relationship). An attorney's failure to exercise "that degree of care, skill, and diligence that a lawyer of ordinary skill and knowledge commonly possesses and exercises" gives rise to a legal malpractice or professional negligence claim.[6] *Cosgrove*, 774 S.W.2d at 664-65 (complaints about an attorney's care, skill, or diligence in representing a client implicate this duty of ordinary care and sound in negligence).

The Texas rule against fracturing a negligence claim prevents legal malpractice plaintiffs from dividing a claim that sounds only in negligence into other claims in order to benefit from a

---

[6] As noted by the Austin court of appeals in *Beck*, the terms "legal malpractice" and "professional negligence" are often used interchangeably to refer to clients' claims challenging the quality of an attorney's representation. *See Beck*, 284 S.W.3d at 427 n.10. We agree with the Austin court that "professional negligence" is the more precise term, but we will also use "legal malpractice" when such term is employed by the caselaw cited. *See id.*

longer limitations period, the availability of treble damages, or "other tactical advantages." *Riverwalk*, 391 S.W.3d at 236; *Beck*, 284 S.W.3d at 427; *see Deutsch v. Hoover, Bax & Slovacek*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.). When the real issue is whether the professional exercised that degree of care, skill and diligence that professionals of ordinary skill and knowledge commonly possess and exercise, then the complaint may not be "fractured" into separate claims for negligence, breach of fiduciary duty, fraud, breach of contract, or DTPA. *Beck*, 284 S.W.3d at 426-27; *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied). The rule against fracturing does not, however, preclude a client from asserting causes of action other than negligence against an attorney if those other claims are supported by the facts. *Riverwalk*, 391 S.W.3d at 236; *Murphy*, 241 S.W.3d at 695; *Deutsch*, 97 S.W.3d at 189; *see also Beck*, 284 S.W.3d at 427-28 (noting the fracturing rule does not necessarily bar the simultaneous assertion of negligence and non-negligence claims that are predicated on some "common or overlapping facts"); *Deutsch*, 97 S.W.3d at 190. However, the client must do more than "merely reassert the same claim for legal malpractice under an alternative label." *Beck*, 284 S.W.3d at 427 (quoting *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). If the "gist" of the complaint is that the attorney did not exercise the degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess and exercise, then the complaint should be pursued as a negligence claim rather than as some other claim. *Riverwalk*, 391 S.W.3d at 236; *Beck*, 284 S.W.3d at 427-28; *Deutsch*, 97 S.W.3d at 189-90. Claims regarding the quality of the lawyer's representation of the client are professional negligence claims. *Murphy*, 241 S.W.3d at 696-97; *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274-75 (Tex. App.—Austin 2002, pet. denied) (if the ultimate issue is whether there has been a breach of duty leading to damages, then the claim constitutes a negligence claim).

We look to the language in the plaintiff's petition to determine whether Sloan is really complaining about the quality of services that Gonzalez and the Law Office provided or about something else entirely. *Beck*, 284 S.W.3d at 428 n.11; *Murphy*, 241 S.W.3d at 698 (noting the remedy sought is also a factor, although not a dispositive factor, in determining the true nature of a claim). We are not bound, however, by the labels the parties place on their claims. *Murphy*, 241 S.W.3d at 697 (citing *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980)); *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto and Friend, LLP*, 404 S.W.3d 75, 82 (Tex. App.— Houston [14th Dist.] 2013, no pet.). "Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice." *Kimleco*, 91 S.W.3d at 924. The analysis focuses primarily on determining whether the facts underlying the cause of action asserted implicate only the attorney's duty of ordinary care or an independently actionable fiduciary, statutory, or contractual duty. *Id.*; *see also Deutsch*, 97 S.W.3d at 189-90.

Notwithstanding the labels placed on the causes of action, the gist of all of Sloan's complaints is that Gonzalez and the Law Office fell below the standard of care required of an attorney with respect to the management, safeguarding, and distribution of her settlement proceeds. As noted, *supra*, Sloan does not find any fault with the legal representation of her interests in the probate proceeding or the settlement of her case. It is only after the settlement proceeds were received that Sloan allegedly sustained any injury giving rise to a complaint. Under each of her causes of action, she seeks the same remedy — recovery of the $75,000 in lost settlement proceeds. A claim based on an attorney's failure to protect the client's settlement proceeds implicates an attorney's duty of ordinary care and constitutes a professional negligence claim. *See Kimleco*, 91 S.W.3d at 924. For example, in *Swank*, former executives of the client corporation sued the attorneys involved in the underlying corporate litigation asserting claims for legal malpractice,

breach of fiduciary duty, conspiracy, conversion, and fraud because the corporation did not receive its share of the settlement proceeds. *Swank*, 258 S.W.3d at 651, 655 (claims were based on the attorneys "handling" of the settlement proceeds and the "application of the credit those [settlement] proceeds allowed"). In characterizing the claims as essentially a legal malpractice claim based on negligence, the court noted the plaintiffs alleged twenty-three acts and omissions which all related in some manner to the settlement, and the law firms' alleged negligence with respect to the settlement, as grounds for the negligence and breach of fiduciary duty claims. *Id.* at 651, 656 n.2. The court stated that, "[a]ny attempt to recast the negligence allegations as breach of fiduciary duty allegations would constitute an improper fracturing of the legal malpractice claim." *Id.* at 656 n.2 (noting the outcome of the appeal would remain the same whether the claims were characterized as negligence or breach of fiduciary duty, or both); *see Byrd*, 891 S.W.2d at 700-01 (legal malpractice claims against attorney and law firm for their "conduct in managing and protecting settlement proceeds" owed to minor client in underlying personal injury action; summary judgment was reversed because fact issues existed as to whether attorney "acted reasonably in handling settlement proceeds" and whether alleged wrongful conversion of settlement proceeds by minor's parents was foreseeable). A lawyer has a duty to safeguard client funds and hold such funds separate from the lawyer's own funds. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT § 1.14, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, App. A, art. X (West 2013).

In a case with facts analogous to the instant case, a former client sued several attorneys who had represented him in an underlying divorce action for breach of fiduciary duty, asserting that the lead attorney was suffering from alcoholism and substance abuse during the representation and that the other attorneys knew of his substance abuse problems and failed to disclose them to the client; the client asserted he would not have hired the law firm if he had known of the lead attorney's problems. *Beck*, 284 S.W.3d at 430-31. The plaintiff similarly argued that the

associated attorneys' failure to disclose Terry's substance abuse "implicated a fiduciary duty that is actionable independently from the duty of ordinary care." *Id.* at 431. The Austin court of appeals disagreed, holding the plaintiff's theory was inconsistent with Texas' rule against fracturing of legal malpractice claims. *Id.* The court explained that, "Texas courts . . . have recognized that a complaint that a lawyer 'misrepresented' his competence to provide legal services or 'failed to disclose' his incompetence implicates only the lawyer's duty of ordinary care and is not independently actionable as a fiduciary duty, DTPA, or other tort claim." *Id.* (internal citations omitted). The court reasoned that a complaint related to a lawyer's competence "ultimately goes to the adequacy of the lawyer's legal representation" and is therefore a negligence claim which may not be fractured. *Id.* at 432; *see Ersek*, 69 S.W.3d at 270, 274 (DTPA claim based on law firm's alleged "misrepresentation regarding its competency" was an impermissibly fractured claim for legal malpractice); *Beck v. Looper, Reed & McGraw, P.C.*, No. 05-05-00724-CV, 2006 WL 1452108, at *1 (Tex. App.—Dallas May 26, 2006, no pet.) (mem. op.) (complaint that lawyer failed to disclose that he omitted performance criteria from employment contract, and that he transferred shares of stock without criteria having been met, alleged claim for professional negligence, not claim for breach of fiduciary duty); *see also Kahlig v. Boyd*, 980 S.W.2d 685, 687-90 (Tex. App.—San Antonio 1998, pet. denied) (client's fraud and DTPA claims against lawyer who secretly had an affair with client's current wife during his representation of client during child-custody dispute with first wife were fractured negligence claims; lawyer's failure to disclose the affair was not an independently actionable breach of fiduciary duty or DTPA claim because it was ultimately a complaint about the quality of the representation).

While Sloan's petition alleged that Gonzalez and the Law Office committed several acts and omissions with respect to Sloan's representation, all of such alleged conduct ultimately goes to the quality of the legal services rendered, or not rendered, with respect to the management and

protection of her settlement proceeds. Further, all of the alleged claims are based on ***the same single injury to Sloan*** — the loss of her $75,000 in settlement proceeds — for which she sought recovery. *See Murphy*, 241 S.W.3d at 698. With respect to Sloan's DTPA claim on which she recovered, she recast her negligence complaint against Gonzalez/the Law Office within the DTPA's terminology of a "failure to disclose" certain information concerning Turton in order to induce her into signing the Employment Agreement, thereby amounting to a "deceptive act." *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(24). Sloan's DTPA claim alleged that Gonzalez failed to disclose Turton's disciplinary history[7] and that Gonzalez would not supervise or "work with" Turton on her case. These omitted matters implicate only the quality and due care of the legal services to be provided. *See Beck*, 284 S.W.3d at 431 (complaint based on failure to disclose attorney's "incompetence" implicates only the attorney's duty of ordinary care); *Murphy*, 241 S.W.3d at 696-97 (claims regarding quality of attorney's services are professional negligence claims). The gist of Sloan's complaint against Gonzalez and the Law Office is violation of the duty of ordinary care in the handling and safeguarding of her settlement funds, which constitutes a professional negligence claim. *See Swank*, 258 S.W.3d at 655-56 (failure to safeguard and manage settlement proceeds is breach of attorney's duty of ordinary care, and amounts to claim for legal malpractice); *Byrd*, 891 S.W.2d at 700-01 (same).

Sloan failed to allege facts sufficient to independently support a non-negligence action against Gonzalez/the Law Office, such as her DTPA, breach of fiduciary duty, and conversion claims. *See Kimleco*, 91 S.W.3d at 924; *Deutsch*, 97 S.W.3d at 189-90. With respect to the DTPA, both sides rely on the Supreme Court's opinion in *Latham v. Castillo*, in which the court held that

---

[7] Sloan cites us to no authority that would expand the scope of an attorney's duty of ordinary care to encompass the obligation to disclose the disciplinary history of another lawyer with whom the attorney will work or to whom the attorney plans to refer the client's case, and we express no opinion on whether such a duty exists.

an allegation that the attorney not only failed to timely file suit, but affirmatively misrepresented to the client that he had filed the petition and was actively prosecuting the case supported a DTPA claim for deceptive conduct independent of a legal malpractice claim based on negligent conduct. *Latham v. Castillo*, 972 S.W.2d 66, 69-70 (Tex. 1998). The court was careful to note, however, that the DTPA is not applicable to the majority of legal malpractice scenarios, and stressed the importance of preserving the distinction between negligent conduct and deceptive conduct. *Id.* at 69; *see Riverwalk*, 391 S.W.3d at 237 (citing *Latham* and referring to the importance of maintaining the difference between negligent conduct and deceptive conduct); *see also James V. Mazuca & Assocs. v. Schumann*, 82 S.W.3d 90, 95 (Tex. App.—San Antonio 2002, no pet.) (en banc op. on reh'g) (construing *Latham* to require an affirmative misrepresentation by an attorney to support a DTPA action independent of a legal malpractice action). Sloan did not plead an affirmative misrepresentation by Gonzalez/the Law Office. Further, merely characterizing an attorney's conduct as "deceptive" does not alone transform what is actually a professional negligence claim into a DTPA claim[8] or breach of fiduciary claim. *See Murphy*, 241 S.W.3d at 697; *see also Aiken v. Hancock*, 115 S.W.3d 26, 29 (Tex. App.—San Antonio 2003, pet. denied) (claim phrased to allege that attorney made "false representations" about his prosecution of plaintiff's case did not support an independent claim under the DTPA for deceptive conduct, only a claim for legal malpractice); *see also Kahlig*, 980 S.W.2d at 689 (claims for fraud and DTPA based on attorney's affair with client's wife were "disguised malpractice claims" because real complaint was that attorney did not represent client to best of his ability).

---

[8] Even if we were to consider Sloan as having sufficiently alleged conduct by Gonzalez/the Law Office that could support an independent DTPA claim, there is no evidence that Gonzalez/the Law Office engaged in "deceptive conduct" with the intent to induce Sloan or that there was an unbroken causal connection between any deceptive conduct by Gonzalez/the Law Office and Sloan's injury four years later due to Turton's theft. *See Doe*, 907 S.W.2d at 481.

As to breach of fiduciary duty, because an attorney's standard of care in negligence cases is often defined by the characteristics of the inherent fiduciary relationship between attorney and client, "not every complaint that can be said to implicate a lawyer's fiduciary duties is actionable separately from a negligence claim." *Beck*, 284 S.W.3d at 429 (citing *Murphy*, 241 S.W.3d at 696). An independently actionable breach of fiduciary duty claim is generally one that focuses on whether an attorney obtained an improper benefit from representing the client, rather than whether the attorney represented the client with the requisite level of skill and care. *Murphy*, 241 S.W.3d at 693 (conduct amounting to breach of fiduciary conduct consists of an attorney pursuing his own pecuniary interests over the client's interests or obtaining an improper benefit based on his representation of the client); *Kimleco*, 91 S.W.3d at 923 (essence of a breach of fiduciary duty involves the "integrity and fidelity" of an attorney and occurs when the attorney obtains an improper benefit from his representation of the client). Further, the mere fact that attorneys may have an expectation of receiving fees from a client's representation is a factor present in virtually every attorney-client relationship, and thus does not itself convert a negligence claim into a breach of fiduciary duty claim. *Beck*, 284 S.W.3d at 433. Here, Sloan's breach of fiduciary duty allegation against Gonzalez/the Law Office is again pled in terms of their failure "to make full disclosure of all material facts" concerning Turton and his acceptance and retention of client funds, alleging the same basic facts underlying her DTPA and negligence claims. Sloan has not pled an independent basis for a breach of fiduciary duty action against Gonzalez and the Law Office.[9] Finally, Sloan's cause of action for conversion is similarly based on the same underlying facts based on Turton's misapplication of her settlement funds and Gonzalez/the Law Office's failure

---

[9] As noted, the jury did not award any damages for breach of fiduciary duty.

to safeguard her client funds; consequently, it cannot support an independent cause of action apart from professional negligence.

The gist of all of Sloan's claims is that Gonzalez/the Law Office, as her attorneys, breached their duty of ordinary care by failing to manage and safeguard Sloan's settlement funds thereby causing her injury. Her claim ultimately goes to the quality of legal services and therefore constitutes a professional negligence claim which may not be fractured. We therefore sustain Gonzalez/the Law Office's Issue No. 5.

Because the jury made an affirmative finding that Gonzalez and the Law Office were negligent and awarded Sloan damages based on such negligence, we must next determine whether the evidence supports a judgment based on Sloan's professional negligence claim.

### PROFESSIONAL NEGLIGENCE CLAIM

With respect to the jury's affirmative finding on Sloan's negligence claim, Gonzalez and the Law Office argue that: (i) there is legally and factually insufficient evidence that an attorney-client relationship existed between Sloan and Gonzalez and his Law Office (Issue No. 4); (ii) there is no evidence of proximate cause because Turton's criminal conduct was unforeseeable (Issue No. 3); and (iii) there is legally and factually insufficient evidence to support the award of actual damages against Gonzalez and the Law Office (Issue No. 8).

In conducting a legal sufficiency review, we credit the evidence that supports the finding if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (legal sufficiency challenge will be sustained when there is a complete absence of evidence of a vital fact or when the evidence offered to prove a vital fact is no more than a scintilla). Evidence is "no more than a scintilla" when it is "so weak as to do no more than create a mere surmise or suspicion that the fact

exists." *Akin, Gump*, 299 S.W.3d at 115 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)). In reviewing for factual sufficiency, we consider and weigh all of the evidence in support of and contrary to the verdict, and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In making this review, we do not substitute our judgment for that of the jury, as they are the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819, 821.

Sloan pled that Gonzalez and the Law Office were negligent in several respects, including by "allowing Eric Turton to have a place to practice law where he would foreseeably . . . misapply client funds without adequate supervision and safeguards to prevent access to client property and funds," and "permitting Eric Turton to receive client funds, permitting Eric Turton to manage funds without supervision, permitting Eric Turton to misapply funds." Sloan also alleged that Turton's criminal actions were foreseeable to Gonzalez and the Law Office and that, but for their negligent conduct, she would not have suffered the loss of her settlement money. In Question Nos. 16 and 18, the jury found that Gonzalez and the Law Office were negligent with respect to Sloan because they failed to use ordinary care, "that is, failing to do that which an attorney of ordinary prudence could have done under the same or similar circumstances or doing that which an attorney of ordinary prudence would not have done under the same or similar circumstances." The term "ordinary care" was further defined as that degree of care that an attorney of ordinary prudence could use under the same or similar circumstances. The jury found that the negligence of Gonzalez and the Law Office, as well as Turton, proximately caused actual damages of $77,550 to Sloan. "Proximate cause" was defined as a cause that was a substantial factor in bringing about an event and without which the event would not have occurred. The jury was also instructed that, "[I]n order to be a proximate cause, the act or omission complained of must be such that an attorney

using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom" and that there may be more than one proximate cause of an event.[10]

To prevail on a professional negligence, or legal malpractice, claim the plaintiff must prove: (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injury, and (4) the plaintiff suffered damages. *Akin, Gump*, 299 S.W.3d at 112. As discussed above, we have already determined that the evidence establishes that an attorney-client relationship was formed between Sloan and Gonzalez and his Law Office, giving rise to a duty of ordinary care. *Cosgrove*, 774 S.W.2d at 665; *Beck*, 284 S.W.3d at 426. Thus, we overrule Gonzalez/the Law Office's challenge to the legal and factual sufficiency of the evidence to support the jury's finding of an attorney-client relationship and the resulting duty of care. Gonzalez and the Law Office do not challenge the sufficiency of the evidence to support the jury's finding that they breached the applicable standard of care.

### *Causation — Foreseeability*

The causation element of a professional negligence claim is met when a jury is presented with pleading and proof that establishes a direct causal link between the actions of the attorney, the injury suffered, and the damages awarded. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex. 1995). Proximate cause consists of two elements — cause in fact and foreseeability — neither of which can be established by mere conjecture, guess, or speculation. *Akin, Gump*, 299 S.W.3d at 122; *Doe*, 907 S.W.2d at 477. Cause in fact is established by proof that the negligent act or omission was a substantial factor in bringing about the injury and without which the harm would not have occurred. *Akin, Gump*, 299 S.W.3d at 122; *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). The test for foreseeability is whether "the actor, as a

---

[10] The jury was asked to determine whether Sloan was also negligent and found that she was not negligent.

person of ordinary intelligence, should have anticipated the dangers that [his] negligent conduct created for others." *Byrd*, 891 S.W.2d at 701 (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex. 1985)). Generally, a third party's criminal conduct is a superseding cause which relieves the negligent actor from liability. *Byrd*, 891 S.W.2d at 701; *Nixon*, 690 S.W.2d at 550. However, the actor's negligence will not be excused where the criminal conduct is a foreseeable result of the actor's negligence. *Byrd*, 891 S.W.2d at 701; *Nixon*, 690 S.W.2d at 550.

We must therefore determine whether the evidence supports a finding that Turton's theft of Sloan's settlement money was foreseeable to Gonzalez/the Law Office. Sloan argues that Gonzalez's knowledge of Turton's prior misconduct and disciplinary history, as well as his knowledge that Turton was using funds from his IOLTA trust account to pay the Law Office rent, suffices to prove foreseeability. We agree. The record contains evidence of Turton's substantial disciplinary history beginning in 1993 and extending to 2002. There were multiple client grievances filed against Turton during that period leading to a public reprimand in 1993 for several violations of the Disciplinary Rules, a 36-month suspension in November 1997 which was partially probated, and a revocation of that probation in December 1998 which resulted in an active suspension of 48 months ending in 2002. Turton's professional misconduct mainly involved various types of neglect, but two cases involved mishandling of client money or property — one case involved Turton "losing" client property and the other involved Turton deducting unrelated attorney's fees owed in a family law matter from the client's personal injury settlement, resulting in Turton owing restitution in the amount of $1,600. Court documents admitted at trial showed that Gonzalez represented Turton at his disciplinary proceedings in 1997 and 1998. In addition, Turton testified that Gonzalez knew about all of his prior disciplinary problems because they started working together and sharing office space in the 1990s. Turton also admitted writing rent checks to Gonzalez/the Law Office out of his IOLTA account after Sloan's settlement money was

deposited in the account. Based on this evidence, the jury could have reasonably found that Turton's criminal conduct in misappropriating Sloan's settlement funds beginning in 2008 and continuing to 2010 was reasonably foreseeable to Gonzalez and the Law Office. Therefore, because Turton's misappropriation of client funds was a foreseeable result of Gonzalez's own failure to use ordinary care to protect Sloan's settlement funds, Gonzalez's own negligence is not excused by Turton's criminal conduct. *See Nixon*, 690 S.W.2d at 550; *Byrd*, 891 S.W.2d at 701.

### *Damages*

Finally, Gonzalez/the Law Office argue there is insufficient evidence to support the jury's award of any actual damages to Sloan as a result of their breach of duty, arguing that "Gonzalez did not steal Sloan's money, Turton did." This is the same argument we have already rejected under causation. Not only does the evidence support a finding of foreseeability, the evidence also shows that the negligent omissions by Gonzalez/the Law Office in failing to safeguard their client's settlement proceeds were a substantial factor in bringing about Sloan's injury and without which the loss of her settlement proceeds would not have occurred. *See Akin, Gump*, 299 S.W.3d at 122; *Marathon*, 106 S.W.3d at 727. Gonzalez and the Law Office do not challenge the dollar amount of damages proximately caused by their negligence as found by the jury in Question No. 18.

We overrule all of Gonzalez/the Law Office's issues challenging the jury's negligence finding and award of damages for professional negligence.

### APPLICABLE DAMAGES ISSUES

In view of our disposition of the above issues, the only other issues raised by Gonzalez and the Law Office that we must address are the following issues related to Sloan's recovery.

*Pre-Judgment and Post-Judgment Interest*

In Issue No. 11, Gonzalez and the Law Office assert that the trial court used the wrong rate to calculate the pre-judgment and post-judgment interest, arguing the correct rate for both is 5% instead of the 18% rate applied by the court. Under her negligence cause of action, Sloan pled for the assessment of pre-judgment interest "as damages on the fiduciary funds for which the law allows recovery at the highest rate allowed by law, 18%, as damages." The parties agreed to submit the issue of pre-judgment "interest as damages" to the trial court for determination. As stated in the judgment, the trial court awarded Sloan "interest as damages at the statutory maximum rate of nonusurious interest applicable on the date of this judgment provided in Tex. Fin. Code §§ 303.009, 304.002, upon the sum of $75,000.00 which the Court finds to be misapplied fiduciary property in light of the jury findings in Phase 1 (Liability) Question[] . . . 18 [Negligence] . . . and in Phase 2 (exemplary) Questions 2 & 3." *See* TEX. FIN. CODE ANN. §§ 303.009, 304.002 (West Supp. 2014 & 2006). The court computed the interest at the rate of 18% as "simple interest, annually, from 3/3/08 until the date of this judgment," yielding $64,125 in pre-judgment interest "as damages." With respect to post-judgment interest, the trial court applied an 18% rate to the total actual damages in the amount of $141,625 [$77,500 + $64,125], and applied a 5% rate to the balance of the amounts awarded to Sloan pursuant to sections 304.003 and 304.006 of the Finance Code. *See* TEX. FIN. CODE ANN. §§ 304.003, 304.006 (West 2006).

Pre-judgment interest is a form of damages. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 898 (Tex. 2000). Traditionally, there have been two types of interest — "interest as interest" and "interest as damages." *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551-52 (Tex. 1985). "Interest as interest" is compensation allowed by law or fixed by the parties for the use or detention of money, while "interest as damages" is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between

the accrual of the claim and the date of judgment." *Id.* at 552 (also noting the distinction no longer carries much meaning); *see also Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 816 (Tex. 2006). Pre-judgment interest is "interest as damages." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 242 (Tex. App.—San Antonio 2001, pet. denied) (noting that the award of pre-judgment interest during periods of delay is generally left to the discretion of the trial court). An award of pre-judgment interest may be based on either an enabling statute or general principles of equity. *Johnson & Higgins*, 962 S.W.2d at 528 (citing *Cavnar*, 696 S.W.2d at 552).

As to the court's application of an 18% rate for calculating the pre-judgment interest "as damages," Sloan only cites a line of breach of fiduciary duty cases which authorize applying the highest rate of interest allowed by law "to prevent the defendant from making a profit on funds appropriated by him." *See Portwood v. Buckalew*, 521 S.W.2d 904, 921 (Tex. Civ. App.—Tyler 1975, writ ref'd n.r.e.); *see also Ward v. Maryland Cas. Co.*, 140 Tex. 124, 166 S.W.2d 117 (Tex. Comm'n App. 1942, opinion adopted); *Anderson v. Armstrong*, 132 Tex. 122, 120 S.W.2d 444 (Tex. Comm'n App. 1938, opinion adopted). Sloan argues her attorney-client relationship with Gonzalez and the Law Office gave rise to a fiduciary duty which was violated by the misapplication of Sloan's settlement funds. However, as discussed above, Sloan is not able to recover under a breach of fiduciary duty theory because this is a professional negligence action which may not be fractured; as noted, even though the jury found a breach, it did not award any damages for breach of fiduciary duty. Sloan cites no other authority to support the trial court's application of an 18% rate for pre-judgment interest, and we have found none that applies in this case. Under general Texas law, pre-judgment interest accrues at the same rate as post-judgment interest and is computed as simple interest, regardless of whether it is based on a statute or equity. *Johnson & Higgins*, 962 S.W.2d at 532-33; *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410,

414-15 (5th Cir. 2011) (per curiam) (noting that *Johnson & Higgins* created a unified system for the calculation of both statutory pre-judgment interest and common law pre-judgment interest).

As to the post-judgment interest rate, we agree with Gonzalez and the Law Office that, as a matter of law, the current rate is five percent. *See* TEX. FIN. CODE ANN. § 304.003(a), (c) (providing in relevant part that the post-judgment interest rate is either "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation" or "five percent a year if the prime rate as published by the Board of Governors . . . is less than five percent"); *see also Arete*, 643 F.3d at 415. We may take judicial notice of the correct, published interest rate in resolving an appeal. *Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994). The applicable post-judgment interest rate on the date the judgment was signed was 5% per annum. *See* Judgment Rate Summary, http://www.occc.state.tx.us/pages/int_rates/Index.html (last visited 8/22/14).

We therefore sustain Gonzalez/the Law Office's issue and hold that the applicable rate is five percent for both the pre-judgment and the post-judgment interest in this case. TEX. FIN. CODE ANN. § 304.003(a), (c); *Johnson & Higgins*, 962 S.W.2d at 532-33.

### *Constructive Trust*

Sloan pled for imposition of a constructive trust based on the misapplied funds, and the trial court imposed a constructive trust on two bank accounts and proceeds from the sale of real property held by Gonzalez and/or the Law Office. In Issue No. 15, Gonzalez and the Law Office assert the trial court abused its discretion by imposing a constructive trust in the absence of a jury finding that Gonzalez/the Law Office acted unconscionably. However, Gonzalez and the Law Office cite us to no authority that a jury finding is required before a constructive trust may be imposed. A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007,

pet. denied) (internal citations omitted). "A constructive trust is a relationship with respect to property, subjecting the person by whom the title to the property is held to an equitable duty to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." *Id.* (quoting *Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158, 160 (1943)). As an equitable remedy, the decision to impose a constructive trust, along with its scope and application, is within the trial court's discretion. *Id.*; *see Carr v. Weiss*, 984 S.W.2d 753, 767 (Tex. App.—Amarillo 1999, pet. denied) (suggesting a jury finding is not necessary to support imposition of a constructive trust).

Further, even if we assume a jury finding is required for imposition of a constructive trust, the jury in this case found in Question No. 23 that money which "in equity and good conscience" belongs to Sloan is being held by Gonzalez and the Law Office in the amounts of $20,000 and $77,500, respectively. In addition, in the second phase of trial, the jury found that Gonzalez and the Law Office engaged in criminal conduct amounting to theft and intentional misapplication of Sloan's trust funds. Therefore, we overrule Gonzalez/the Law Office's challenge to the constructive trust.

## CONCLUSION

Based on the foregoing analysis, we reverse the judgment based on Sloan's DTPA cause of action and render judgment against Gonzalez and his Law Office for professional negligence based on their percentages of proportionate responsibility found by the jury and award Sloan (1) $77,500 in actual damages based on the jury's findings in Question Nos. 16 and 18, (2) pre-judgment interest on the actual damages at the rate of 5% per annum, (3) court costs through trial of $7,830.76, and (4) post-judgment interest at the rate of 5% per annum. *See* TEX. CIV. PRAC. &

REM. CODE ANN. § 33.002(a)(1) (West 2008).  Finally, we affirm the portion of the judgment imposing the constructive trust.


Rebeca C. Martinez, Justice